As there were not sufficient funds on hand to pay the checks drawn in this case by plaintiff on its account in defendant bank, these checks were properly returned.

Judgment affirmed.

ST. PAUL, J., absent.

154 So. 613

## ADDISON COUNTY TRUST CO. v. CASPARI.

### No. 32058.

May 29, 1933.

On Rehearing Oct. 30 and Nov. 7, 1933.

On Second Rehearing Feb. 26, 1934.

Rehearing Denied April 2, 1934.

Hakenyos, Provosty & Staples, of Alexandria, Phanor Breazeale, of Natchitoches, and Le Doux R. Provosty, of Alexandria, for appellant.

J. B. Nachman, of Alexandria, for appellee.

LAND, Justice.

As the alleged bona fide holder for valuable consideration before maturity of six promissory notes, made by defendant payable to the order of Security Mortgage Company of Louisiana, Inc., Alexandria, La., and by that company assigned and transferred without recourse, Addison County Trust Company of Middlebury, Vt., has brought the present suit to recover against defendant a judgment in the sum of $2,800 in principal, with interest thereon at the rate of 6 per cent. per annum from November 1, 1929, and 8 per cent. interest thereon after November 1, 1930, until paid, and 10 per cent. attorney's fees. Each of these notes has attached thereto interest coupons.

In his answer, defendant admits signing these notes and the interest coupons attached, but denies that plaintiff is the bona fide owner and holder for value received before maturity of the notes sued upon, and avers that the notes were fraudulently and wrongfully indorsed by Security Mortgage Company of Louisiana, Inc., the agent of plaintiff in the suit, and are fraudulently and wrongfully held by the Addison County Trust Company.

Further answering, defendant avers that no consideration was paid by plaintiff for these notes and the interest coupons attached, but that same were received by the Addison County Trust Company for a mortgage loan to one Fontenot, negotiated by Security Mortgage Company of Louisiana, Inc., as agent for that company, and that this loan was valueless; and that the holding of these notes by plaintiff is a fraud upon defendant and an attempt to subject him to liability without basis in fact or in law.

The case was tried upon these issues in the lower court, and judgment was rendered in favor of defendant, rejecting plaintiff's demand and dismissing plaintiff's suit at its costs.

1. On *August 31, 1929,* defendant, Samuel Caspari, purchased from the heirs of Nicola Givanovich, for speculation purposes, a number of farms, or tracts of land, situated in the parish of Natchitoches. Seven of these farms, or tracts of land, are located on Cane river, and one on Red river in the parish of Natchitoches, and contain an estimated acreage of 13,095.61. This estimate, however, does not include the sale to defendant "of all other lands" in ward 10 of Natchitoches parish, the acreage of which is not stated in the deed.

It is declared in this deed that: "It is hereby recognized and declared by said vendors that the said Samuel Caspari, in anticipation of effecting this purpose (the purchase of these lands) *has executed and caused to be recorded in favor of the Security Mortgage Company, certain acts of mortgage affecting* three thousand, seven hundred ninety-nine and fifty-three hundredths (3,799.53) acres of the above described lands and improvements thereon and particularly described *by loan numbers* and property descriptions as set forth in acts of mortgage as follows to-wit:

"*Loan* 4025 Samuel Caspari, 481.75 acres.

"*Loan* 4026 Samuel Caspari, 1112.50 acres.

"*Loan* 4027 Samuel Caspari, 755.37 acres.

"*Loan* 4028 Samuel Caspari, 823.56 acres.

"*Loan* 4029 Samuel Caspari, 277.35 acres.

"*Loan* 4030 Samuel Caspari, 149 acres.

"*Loan* 4031 Samuel Caspari, 200 acres."

After each of these loans, the lands mortgaged to secure same are specifically described in the act of sale from the heirs of Nicola Givanovich to Samuel Caspari, defendant.

Then follows this declaration in the act of sale: "The said vendors do hereby declare that said vendor's lien and privilege *and special mortgage* hereto recited as being granted in favor of said vendors *shall be subordinated* in rank and privilege *to said special mortgages in favor of said Security Mortgage Company,* affecting said three thousand, seven hundred ninety-nine and fifty-three hundredths (3,799.53) acres, and that, therefore, the mortgage of said vendors shall be a second mortgage upon said 3,799.53 acres, *the existence of*

*which mortgages in favor of said Security Mortgage Company* is hereby recognized only in the event of the said Samuel Caspari accepting this act of sale as herein indicated and set forth."

On *August 31, 1929*, the defendant, Samuel Caspari, accepted in a notarial act the above act of sale and, in addition to the vendor's lien and privilege granted by him, gave a special mortgage in favor of his vendors and of future holder or holders of the notes for the credit portion of the purchase price, without the necessity of any notarial transfer thereof. The consideration of this sale was the sum of $200,000, $100,000 of which was paid in cash, and for the balance defendant executed 59 notes, 58 of these notes being for $1,700 each, and the last for $1,400.

This act of sale was received for record in Natchitoches parish August 31, 1929.

The act of sale from the heirs of Nicola Givanovich to defendant, Samuel Caspari, is of date *July 29, 1929;* but before this act was accepted by him and recorded on *August 31, 1929*, he had mortgaged 3,799.53 acres of this property *in favor of the Security Mortgage Company.* Each of these mortgages is designated as *"Loan* 4025 and seriatim to 4031, Samuel Caspari," and states the acreage after each loan secured by the mortgage.

The Security Mortgage Company was, therefore, well aware of the fact that the above mortgages executed to its order by defendant, Samuel Caspari, did not represent any indebtedness whatever due by him to the Security Mortgage Company, but were *farm loan mortgages* to be negotiated by the Security Mortgage Company, as the agent of defendant, for the purpose of securing for him *loans* on the farms mortgaged.

The six notes upon which the Addison County Trust Company has sued are "Number 5079 –A–B–C–D–E–F," and each is designated as:

*"First Mortgage* Real Estate Bond

"Negotiated by the

"Security Mortgage Company of Louisiana, Inc.,

"Alexandria, Louisiana."

These notes are dated *July 24, 1929*, prior to the purchase by defendant from the heirs of Nicola Givanovich, and are payable to the order of the Security Mortgage Company, and on the reverse of each appears the following:

"For value received we hereby assign and transfer the within note and coupons together with all interest in and rights *under the mortgage securing the same* to ——— *without recourse.*

"[Signed]  Security Mortgage Company of La., Inc.,

"By C. W. Brown, Vice President.
"Attest, G. A. Burton, Secretary."

At the bottom of each note also appears the following:

"Ne Varietur

"For identification with *an act of special mortgage* containing pact de non alienando and 10% attorney's fee clause.  Executed before me this 24th day of July, 1929.

"[Signed]   Marguerite C. Barnard,
"Notary Public [Seal]."

The act of mortgage was never recorded, either by the Security Mortgage Company, the notary, or by defendant.

At the time defendant executed these notes, he applied to the Security Mortgage Company for a loan, and these notes were delivered by him to that company, as his agent, solely for the purpose of negotiation for a loan. The Security Mortgage Company well knew that defendant was not indebted to that company in any sum whatever, and that said company had no right whatever to sell these notes to any one *except for cash*, in order to obtain the loan needed by defendant. The Security Mortgage Company also well knew that a number of such *loan mortgages* had been executed on other occasions in its favor by defendant, as evidenced by the recitals in the act of sale from the heirs of Nicola Givanovich to defendant, Samuel Caspari.

Plaintiff, Addison County Trust Company, is engaged in the banking business at Middlebury, Vt., and in the purchase of *loan mortgages*. It acquired these *loan* notes on September 30, 1929, through H. G. Root, Inc., from the Security Mortgage Company. H. G. Root, Inc., is located at Rutland, Vt., and is engaged in the business of purchasing securities, principally western farm loans, and reselling them to its customers, principally located in the state of Vermont. H. G. Root, Inc., is also the agent of the Security Mortgage Company of Louisiana. Mr. G. H. Root, witness for plaintiff, testified that: "About August 1, 1929, Mr. Burton (secretary of the Security Mortgage Company) was here (Rutland, Vt.) and met Judge Sturtevant, and Mr. Ufford (secretary & treasurer of the Addison County Trust Co.)' and myself in Judge Sturtevant's office, *at which time he proposed the exchange of the Fontenot loan for the Caspari loan No. 5079, and, at that time, had the application of*

*this loan with him, and submitted it to Mr. Ufford* and Judge Sturtevant. Mr. Burton came from Louisiana to Rutland, and he and I came together to Judge Sturtevant's office, where the above conversation took place." T. 113.

On August 28, 1929, H. G. Root wrote to G. A. Burton, secretary of the Security Mortgage Company, to send him "application on 5079-Caspari $2,800.00," the notes sued on in this case, and stated in the letter of that date: "I think this is *the loan that we were to substitute with the Addison County Trust Company for the Fontenot loan.*" T. 130.

On September 27, 1929, three days before the Addison County Trust Company purchased the Caspari *loan* notes, P. S. Ufford, its secretary and treasurer, wrote the following letter to H. G. Root, Inc., Rutland, Vt.: "Inclosed herewith you should find *Caspari application* as requested by you this morning." T. 131.

On September 28, 1929, H. G. Root, vice president of H. G. Root, Inc., and agent of Security Mortgage Company, wrote to G. A. Burton, secretary of that company, as follows:

"I have at last *made a trade on 5079-Caspari for 3340-Fontenot, which deal was made when you were with me* in Mr. Sturtevant's office at Middlebury.

"I will send in the old papers and check for difference the first part of next week, just as soon as they are received from the Bank." T. 132.

On September 30, 1929, the date of the purchase of the Caspari *loan* notes by the Addison County Trust Company, P. S. Ufford,

secretary and treasurer of that company, wrote to H. G. Root, Inc., as follows: "Enclosed herewith you should find check for $1,305.33 balance you are due *in exchange of Fontenot #3340 for Caspari #5079.*" T. 133.

On October 1, 1929, H. G. Root, vice president of H. G. Root, Inc., and agent of the Security Mortgage Company, replied as follows to the letter received from P. S. Ufford, secretary and treasurer of the Addison County Trust Company: "This will acknowledge receipt of check for $1,305.33 in payment of the difference *in the exchange of the Fontenot loan for the Caspari loan,* for which we thank you." T. 134.

On October 1, 1929, H. G. Root, vice president of H. G. Root, Inc., and agent of the Security Mortgage Company, wrote the following letter to that company:

"Mr. G. A. Burton, Sec.,

"Security Mortgage Co., Alexandria, La.

"My dear Mr. Burton:

"I enclose herewith check for $1,305.33 in payment of the difference *in the exchange of the Fontenot loan for the Caspari loan with the Addison County Trust Company.* The statement of the transaction is as follows:

"5079 Caspari Prin. Oct. 1, 1929 $2800.00
"3340 Fontenot Prin. $1300.00
*"Delinquent interest 1928*
"3 mos. on $1500.00 (a) 8% $30.00
"9 mos. on $1300.00 (a) 8% $78.00
"From 12-1-28 to 10-1-29 (a) 8% $86.87 $1,494.67
                         Balance due        $1,305.33

"Kindly have the enclosed assignments recorded in the name of Addison County Trust Company and return same to us as soon as possible. Also send in *the recorded mort-*

*gage* and title policy in this loan as soon as you can." T. 135.

The act of mortgage securing the Caspari loan notes was never recorded, and neither the Fontenot mortgage note, *nor the delinquent interest* paid on same by the Addison County Trust Company, nor one cent of the check for $1,305.33, was ever delivered or paid to the defendant, Samuel Caspari, by the Security Mortgage Company.

In addition to all of this, the Addison County Trust Company admits in the testimony of P. S. Ufford, its secretary and treasurer, that it purchased the Caspari loan notes, under a transfer and assignment to it *"without recourse"*; that it made no investigation as to whether or not the mortgage securing the Caspari notes had been recorded; and did not have the title to the property subject to the mortgage investigated. T. 41, 45, 46.

As the Addison County Trust Company well knew that the Security Mortgage Company *did not own* the Caspari notes, but that these were *loan notes* to be disposed of by that company solely for the purpose of raising money for a loan applied for by defendant, plaintiff was well aware of the fact, at the time of the purchase of these notes, that the Security Mortgage Company had no right or authority whatever to sell these notes to plaintiff for a consideration, part in cash, and part for another mortgage note which, at best, was of doubtful value, as the debtor had defaulted on the payment of interest.

Our conclusion is that plaintiff did not acquire the Caspari *loan* notes, either in good

faith or at all, under the facts and circumstances of this case.

Security Mortgage Company, the trusted agent of defendant, not only succeeded in fleecing him, but also in fleecing the plaintiff, in its attempt to secure from that company "good mortgage notes" in exchange for one of questionable value.

Judgment affirmed.

ST. PAUL, J., dissents.

### On Rehearing.

OVERTON, Justice.

A careful review of the record in this case leads us to the conclusion that our former opinion is correct, and should be reinstated.

Therefore, the opinion and decree, originally handed down herein, is reinstated and made the judgment of this court.

ST. PAUL, ROGERS, and ODOM, JJ., dissent.

ROGERS, Justice (dissenting).

I think the record clearly shows that the plaintiff trust company is the bona fide third holder for value of the notes herein sued on and is, therefore, entitled to recovery thereon.

Plaintiff purchased the notes in question from H. G. Root, Inc., a Vermont corporation, acting for the mortgagee, Security Mortgage Company, a Louisiana corporation.

As a consideration for its purchase, plaintiff gave H. G. Root, Inc., its check for $1,305.-

33 and certain Fontenot mortgage notes for the difference of $1,494.67, making a total of $2,800, the amount herein sued for. The Fontenot notes were secured by vendor's lien and mortgage on 117 acres of land situated in Louisiana, and had been previously purchased by the plaintiff trust company from Harry L. Winter, Inc., a concern occupying offices with H. G. Root, Inc.

The proposal that the Fontenot notes be exchanged in part payment for the Caspari notes did not emanate from the plaintiff. The proposal was made to plaintiff by G. A. Burton, secretary of the Security Mortgage Company, and H. G. Root, secretary of H. G. Root, Inc. There was no fraud or collusion in the transaction on the part of plaintiff, which, in the absence of any knowledge to the contrary, had the right to presume that the representatives of the Security Mortgage Company and H. G. Root, Inc., in negotiating defendant's notes, were authorized to make and accept any reasonable proposition on defendant's behalf. The cash paid and vendor's lien notes exchanged were a sufficient consideration for the acquisition by plaintiff of the Caspari notes.

H. G. Root, Inc., transmitted plaintiff's check and the accompanying Fontenot mortgage notes to the Security Mortgage Company. The fact that the Security Mortgage Company, admittedly defendant's agent, failed to turn over to defendant the proceeds of the sale of his notes, is in no wise attributable to the plaintiff; and plaintiff should not be called upon to stand the resulting loss.

I, therefore, dissent from the majority opinion and decree herein.

PER CURIAM.

In the above entitled and numbered case, the attorney for the Addison County Trust Company, plaintiff and appellant, has filed a motion directing the court's attention to the fact that the decree handed down by this court on the 30th day of October, 1933, reinstating the decree handed down on the 29th day of May, 1933, affirming the judgment of the district court, was concurred in by only four members of the court, and that one of the members of the court who concurred in the decree was absent during the argument of the case on rehearing and therefore should not have taken part in the rendering of the decree. The attorney for the plaintiff and appellant therefore has moved that the court set aside the decree rendered on the 30th day of October, 1933, and reassign the case for reargument.

In view of the fact that one of the four members of the court, the CHIEF JUSTICE, who concurred in the decree rendered on the 30th day of October, 1933, was absent during the argument of the case and therefore did not intend to take part in the rendering of the decree, but took part inadvertently and not remembering that he was absent during the argument, it is ordered that the decree handed down on the 30th day of October, 1933, and concurred in by only three members of the court who had heard the argument, is set aside in so far as it purports to be a decree of the court, and this case is ordered reassigned for reargument on the rehearing heretofore granted.

## On Second Rehearing.

ODOM, Justice.

On further consideration of this case, we have reached the conclusion that our original decree is erroneous.

Mr. Caspari, the defendant, executed a mortgage and a series of notes in favor of the Securities Mortgage Company of Alexandria, La., on July 24, 1929. As to what he did with the notes sued on he says: "I gave them to the Securities Company of Alexandria to sell." He says that when he made the notes and delivered them to the Securities Mortgage Company, he understood that the company was "going to sell them to different investors, that they were going to negotiate them for me."

That the Securities Mortgage Company, agent for Caspari, did, through H. G. Root, Inc., its agent, sell the notes here involved is not disputed. It is also undisputed that the Addison County Trust Company, the plaintiff, acquired the notes and paid therefor $1,305.33 cash and for the balance gave the Fontenot notes, valued at $1,494.67. The cash and the Fontenot notes passed from the hands of the plaintiff to the hands of H. G. Root, Inc., and from it into the hands of the Securities Mortgage Company of Alexandria, the admitted agent of Caspari, the defendant. What Caspari's agent, the Securities Mortgage Company, did with the cash and the Fontenot notes is not disclosed by the record. Caspari says he got neither. Even so, the plaintiff is not precluded from recovery because of that fact.

These were negotiable promissory notes. They were put in commerce, put on the market for sale by the defendant, Caspari, through his "trusted agent," the Securities Mortgage Company, and were sold to the plaintiff. It is not charged, nor was there any attempt to show, that plaintiff, the purchaser of the notes, perpetrated any fraud against Caspari. The only fraud or bad faith disclosed is that perpetrated by Caspari's agent, the Securities Mortgage Company, which consisted only of its failure to account to Caspari for the proceeds of the notes which it had received. That fraud was perpetrated after the notes were negotiated, and was only one by the agent against its principal, for which plaintiff was not responsible and in which it had no part.

It is suggested that the Fontenot notes were of doubtful value to the knowledge of plaintiff. The record on that point shows that these notes were secured by first mortgage on 117 acres of land, and there is nothing to show, even to indicate, that the land was not ample security for the notes. The interest on the notes had not been paid, and Mr. Ufford, of the plaintiff company, said that for this reason it was considered that their value was somewhat impaired. He said his company was willing to exchange these notes for the Caspari notes "because we considered the Caspari loan more favorable than the Fontenot loan."

A default in the payment of interest on commercial paper always impairs its value to some extent in the eyes of those who deal in such paper, even though well secured. However that may be, the payment of $1,305.-33 cash was alone a sufficient considera-

tion to support the transfer in so far as plaintiff is concerned. The Securities Mortgage Company was authorized by Caspari to sell the notes, and it is not shown that Caspari fixed the terms on which they were to be sold, much less that plaintiff knew that they were to be sold for their face value in cash.

It is suggested further that plaintiff knew that the Securities Mortgage Company did not own the Caspari notes and knew that these notes were loan notes to be disposed of by that company for the sole purpose of raising money. All that plaintiff knew about this was what Burton, representing the Securities Mortgage Company, and H. G. Root, secretary of H. G. Root, Inc., said to it, and as stated by Mr. Justice Rogers in his dissenting opinion:

"The proposal that the Fontenot notes be exchanged in part payment for the Caspari notes did not emanate from the plaintiff. The proposal was made to plaintiff by G. A. Burton, secretary of the Security Mortgage Company and H. G. Root, secretary of H. G. Root, Inc. There was no fraud or collusion in the transaction on the part of plaintiff, which, in the absence of any knowledge to the contrary, had the right to presume that the representatives of the Security Mortgage Company and H. G. Root, Inc., in negotiating defendant's notes, were authorized to make and accept any reasonable proposition on defendant's behalf."

These notes were negotiated by Caspari through his agents. They are complete and regular upon their face, disclosing no infirmities. The plaintiff purchased them before

maturity in good faith and for value. It is therefore a holder of them in due course. Negotiable Instruments Law (Act. No. 64 of 1904) § 52. The legal consequence is that plaintiff is entitled to recover. No citation of authority is necessary to support this proposition.

For the reasons assigned, it is now ordered and decreed that the judgment appealed from be reversed and that plaintiff, Addison County Trust Company, do have judgment against the defendant, Samuel Caspari, in the full sum of $2,800 in principal, with 6 per cent. interest thereon from November 1, 1929, to November 1, 1930, and 8 per cent. interest thereon from the latter date until paid, and 10 per cent. attorneys' fees, together with all costs of this suit.

The right of the defendant, Caspari, to apply for a rehearing is reserved.

OVERTON, LAND, and BRUNOT, JJ., dissent.